| | | |
|---|---|---|
| D'WAN WHETSTONE<br>2316 Robb Street<br>Baltimore, Maryland 21218 | * | IN THE UNITED STATES |
| | * | DISTRICT COURT FOR |
| *Plaintiff* | * | THE DISTRICT OF MARYLAND, |
| v. | * | BALTIMORE DIVISION |
| MAYOR AND CITY COUNCIL<br>OF BALTIMORE CITY<br>100 North Holiday Street<br>Baltimore, Maryland 21202 | * | |
| | * | *JURY TRIAL DEMANDED* |
| Serve on:<br>Andre Davis, City Solicitor<br>100 North Holiday Street<br>Baltimore, Maryland 21202 | * | |
| and | * | |
| STEPHANIE RAWLINGS-BLAKE,<br>former Mayor of the City of Baltimore,<br>in her individual capacity,<br>2234 Foxbane Square<br>Baltimore, Maryland 21209 | * | |
| and | * | |
| CATHERINE PUGH,<br>in her official capacity,<br>as Mayor of the City of Baltimore,<br>City Hall, Room 250<br>100 North Holiday Street<br>Baltimore, Maryland 21202 | * | |
| Serve on:<br>Andre Davis, City Solicitor<br>100 North Holiday Street<br>Baltimore, Maryland 21202 | * | |
| and | * | |
| BALTIMORE CITY<br>POLICE DEPARTMENT,<br>601 East Fayette Street<br>Baltimore, Maryland 21202 | * | |

   *Serve on:*               \*
   Daniel Beck, Chief Legal Counsel
   242 West 29th Street           \*
   Baltimore, Maryland 21211

                       \*

and

                       \*

**ANTHONY BATTS,**
in his individual capacity,
as former Commissioner of the         \*
Baltimore City Police Department,
1861 West Eagle Trace Boulevard        \*
Coral Springs, Florida 33071

                       \*

and

                       \*

**DARRYL DESOUSA,**
in his official capacity,             \*
as Commissioner of the
Baltimore City Police Department,        \*
601 East Fayette Street
Baltimore, Maryland 21202           \*

   *Serve on:*               \*
   Daniel Beck, Chief Legal Counsel
   242 West 29th Street           \*
   Baltimore, Maryland 21211

                       \*

and

                       \*

**THADIUS MCMILLIAN**, Police Officer,
in his individual and official capacity,
Baltimore City Police Department        \*
601 East Fayette Street
Baltimore, Maryland 21202           \*

   *Serve on:*               \*
   Daniel Beck, Chief Legal Counsel
   242 West 29th Street           \*
   Baltimore, Maryland 21211

                       \*

and

                       \*

**STEVEN FRASER**, Police Officer,
in his individual and official capacity,       \*
Baltimore City Police Department

601 East Fayette Street     \*
Baltimore, Maryland 21202

                                                    \*

    *Serve on:*
    Daniel Beck, Chief Legal Counsel     \*
    242 West 29th Street
    Baltimore, Maryland 21211
                                              \*

and                                                         \*

**ALAN CHANOINE,** Police Officer,
in his individual and official capacity,     \*
Baltimore City Police Department
601 East Fayette Street
Baltimore, Maryland 21202
                                                  \*

    *Serve on:*
    Daniel Beck, Chief Legal Counsel     \*
    242 West 29th Street
    Baltimore, Maryland 21211     \*

and                                                         \*

**THOMAS MISTYSYN,** Police Officer,     \*
in his individual and official capacity,
Baltimore City Police Department
601 East Fayette Street     \*
Baltimore, Maryland 21202
                                                  \*

    *Serve on:*
    Daniel Beck, Chief Legal Counsel     \*
    242 West 29th Street
    Baltimore, Maryland 21211     \*

    *Defendants*     \*    Case Number:_____

                                                  \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

1. The United States Justice Department launched a civil rights investigation in May 2015, after the City of Baltimore was beset by protests and riots over the death of Freddie Gray.

2. On August 10, 2016, the United States issued a report detailing the findings of its investigation pursuant to 42 U.S.C. § 14141 (*hereinafter,* the "Report"). The Report documented areas in which the United States found reasonable cause to believe that the Baltimore City Police Department engages in a pattern and practice of conduct that violates the United States Constitution and other federal laws, including: (1) making unconstitutional stops, searches, and arrests; (2) using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans; (3) using excessive force; and (4) retaliating against people engaging in constitutionally-protected expression. The Report additionally outlined areas in which the United States had serious concerns about the lawfulness of Baltimore City Police Department's police practices.

3. Thereafter, the United States filed a Complaint in this Honorable Court based on the results of its investigation, as outlined in its Report, which ultimately was resolved with a consent decree enjoining the City of Baltimore and the Baltimore City Police Department, their officials, officers, employees, agents, assigns, and successors from engaging in the patterns and practices of conduct by law enforcement officers of the Baltimore City Police Department that were the basis of the Report. *See* the Report which details specific examples in support of the Plaintiff's *Monell* claim arising under 42 U.S.C. §1983, attached hereto as Exhibit A.

4. This Complaint concerns the policies, customs, and/or patterns and practices that existed in the BPD on and around March 12, 2015, three months prior to the Justice Department's launch of its civil rights investigation, the horrific results of which are detailed in the incorporated Report, and how the Plaintiff, D'Wan Whetstone, was subjected, *inter alia,* to the same cowardly display of excessive force and brutality that has plagued our great City of Baltimore for well over a decade.

## *PARTIES*

### I.     THE PLAINTIFF

5.     At all times herein pertinent, the Plaintiff, D'Wan Whetstone, is and was a resident of the State of Maryland and a citizen of the United States of America. She currently resides in the City of Baltimore and at all times herein pertinent resided in the City of Baltimore.

### II.    THE DEFENDANTS

#### A.     THE CITY OF BALTIMORE

6.     That at all times herein pertinent, the Defendant, Mayor and City Council of Baltimore City, was and is a municipal corporation, organized and existing under the laws of the State of Maryland. In this respect, the Mayor and City Council of Baltimore City acted through its agents, employees and servants, who were the policy makers for the Baltimore City Police Department, and held responsibility for the conduct of the police officers employed by the Baltimore City Police Department.

7.     Defendant Stephanie Rawlings-Blake was the Mayor of the City of Baltimore at and around the time the police officers named in this Complaint subjected Ms. Whetstone to the exercise of excessive force and brutality, false arrest and incarceration, and malicious prosecution. As Mayor of the City of Baltimore, Defendant Rawlings-Blake acted under color of law in overseeing the Baltimore City Police Department and introducing police policies, customs, and/or patterns and practices that encouraged and required, *inter alia,* unlawful, physically aggressive policing, the exercise of excessive force and brutality, false arrest and incarceration, and malicious prosecution. Defendant Rawlings-Blake failed to act to ensure that these unconstitutional practices ceased. Defendant Rawlings-Blake is being sued in her individual capacity.

8.     Defendant Catherine Pugh is the current Mayor of the City of Baltimore and like her predecessor, Defendant Rawlings-Blake, acts under color of law in overseeing the Baltimore City Police Department and introducing police policies, customs, and/or patterns and practices that encourage and require, *inter alia,* unlawful, physically aggressive policing, the exercise of excessive force and brutality, false arrest and incarceration, and malicious prosecution. Defendant Pugh has failed to act to ensure that these unconstitutional practices ceased. Defendant Pugh is being sued in her official capacity.

## B. THE BALTIMORE CITY POLICE DEPARTMENT

9. At all times herein pertinent, the Defendant, Baltimore City Police Department, was and is an agency of the State of Maryland, but otherwise a local government under Maryland Code Annotated, Courts and Judicial Proceedings, § 5-301(d)(21) and is subject to suit under 42 U.S.C. § 1983.

10. The Defendant, Anthony Batts, was the Commissioner of the Baltimore City Police Department at the time Ms. Whetstone was subjected to the exercise of excessive force and brutality, false arrest and incarceration, and malicious prosecution. The Commissioner is charged with functioning as the Chief of Police and Executive Officer of the Baltimore City Police Department. In directing and supervising the operations and affairs of the Baltimore City Police Department, the Commissioner is vested with all the powers, rights, and privileges attending the responsibility of management and may exercise the same, where appropriate, by rule, regulation, order or other departmental directive, which shall be binding on all members of the Baltimore City Police Department. The authority and responsibility vested in the Commissioner includes, but is not limited to: (1) the appointment of deputy commissioners to serve at his pleasure, and other ranks and positions above the rank of captain for the purpose of ensuring effective and efficient staffing and operation of the major functional subdivisions of the Baltimore City Police Department; (2) the determination and establishment of classifications of ranks, grades and positions for police officers within the Baltimore City Police Department; (3) to determining and designating the authority, responsibility, duties, assignments, rights and privileges of each rank, grade or position, and to establish the order of succession to positions of command within the Baltimore City Police Department; (4) regulating attendance, conduct, training, discipline and procedure for all members of the Baltimore City Police Department and to make other rules, regulations and orders as may be necessary for the good governance of the Baltimore City Police Department and its members; and (5) suspending, amending, rescinding, abrogating or canceling any rule, regulation, order or other departmental directive adopted by him or any former police commissioner, and to adopt all other reasonable rules, regulations and orders as he may deem necessary to enable the Baltimore City Police Department to effectively discharge its duties. Defendant Batts is being sued in his individual capacity.

11. The Defendant, Darryl Desousa, is the current Commissioner of the Baltimore City Police Department and like his predecessor, Defendant Batts, is charged with functioning as the Chief of Police and Executive Officer of the Baltimore City Police Department. In directing and supervising the operations and affairs of the Baltimore City Police Department, the Commissioner is vested with all the powers, rights, and privileges attending the responsibility of management and may exercise the same, where appropriate, by rule,

regulation, order or other departmental directive, which shall be binding on all members of the Baltimore City Police Department. The authority and responsibility vested in the Commissioner includes, but is not limited to: (1) the appointment of deputy commissioners to serve at his pleasure, and other ranks and positions above the rank of captain for the purpose of ensuring effective and efficient staffing and operation of the major functional subdivisions of the Baltimore City Police Department; (2) the determination and establishment of classifications of ranks, grades and positions for police officers within the Baltimore City Police Department; (3) to determining and designating the authority, responsibility, duties, assignments, rights and privileges of each rank, grade or position, and to establish the order of succession to positions of command within the Baltimore City Police Department; (4) regulating attendance, conduct, training, discipline and procedure for all members of the Baltimore City Police Department and to make other rules, regulations and orders as may be necessary for the good governance of the Baltimore City Police Department and its members; and (5) suspending, amending, rescinding, abrogating or canceling any rule, regulation, order or other departmental directive adopted by him or any former police commissioner, and to adopt all other reasonable rules, regulations and orders as he may deem necessary to enable the Baltimore City Police Department to effectively discharge its duties. Defendant Desousa has failed to act to ensure that the unconstitutional practices at issue in this Complaint ceased. Defendant Desousa being sued in his official capacity.

12. That at all times herein pertinent, the Defendant, Thadius McMillian, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant McMillian acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant McMillian is being sued in his individual and official capacity.

13. That at all times herein pertinent, the Defendant, Steven Fraser, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant Fraser acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the

City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant Fraser is being sued in his individual and official capacity.

14. That at all times herein pertinent, the Defendant, Alan Chanoine, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant Chanoine acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant Chanoine is being sued in his individual and official capacity.

15. That at all times herein pertinent, the Defendant, Thomas Mistysyn, was a police officer of the Baltimore City Police Department, and was acting in such a capacity as an agent, servant, and employee of the Baltimore City Police Department, and was acting under the direction and control of the Baltimore City Police Department, and pursuant to either official policy, or the custom, practice, and usage of the Baltimore City Police Department. Additionally, at all times referred to herein, Defendant Mistysyn acted under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Maryland, the City of Baltimore, the Baltimore City Police Department, and pursuant to his authority as a police officer of the Baltimore City Police Department. Defendant Mistysyn is being sued in his individual and official capacity.

## JURISDICTION AND VENUE

16. This action arises under the Constitution to the United States; 42 U.S.C. § 1983; and 42 U.S.C. § 1988(b).

17. This Court has original jurisdiction over Ms. Whetstone's federal law claims, including claims arising under the Constitution of the United States of America, pursuant to 28 U.S.C. § 1943 and 28 U.S.C. § 1331.

18. Under 28 U.S.C. § 1391(b)(1) and (2), venue is appropriate in the United States District Court, Baltimore Division, because the Baltimore Division is (1) a judicial district where at least one Defendant resides and all Defendants reside in the State of Maryland, and (2) it is the judicial district in which all the events and omissions giving rise to Ms.

Whetstone's Complaint occurred.

### *ALLEGATIONS COMMON TO ALL CLAIMS*

19. On or about March 12, 2015, Defendant Chanoine alleges that he was in a marked patrol vehicle patrolling around the 1100 block of Darley Avenue in Baltimore City. While patrolling, he alleges that he observed a tan motor vehicle being driven by Ms. Whetstone that was double-parked in the 1200 block of Darly Avenue and that Ms. Whetstone was talking to a pedestrian that was never identified.

20. Defendant Chanoine further alleges that Ms. Whetstone "decided to continue her conversation with the unknown pedestrian while other vehicles waited behind" and that "the [other] vehicles had to drive around [Ms. Whetstone] nearly hitting the sidewalk. At this time I decided to conduct a traffic stop." The statute relied on by Defendant Chanoine to make the traffic stop, however, Maryland Code, *Transportation*, § 21-1001(b) – Leaving Standing Vehicles – provides that: "…on any highway outside of a business district or residential district, a person may not leave any vehicle standing, without providing an unobstructed width of the roadway opposite the standing vehicle for the free passage of other vehicles." Where, as here, § 21-1001(b) did not provide Defendant Chanoine with probable cause to engage in a traffic stop, *inter alia,* because Ms. Whetstone was not outside a business district or a residential district and did not leave her motor vehicle.

21. After Defendant Chanoine had engaged in the unlawful traffic stop, he further alleges that he noticed that Ms. Whetstone's mirror was missing from the left side of her motor vehicle. Defendant Chanoine alleges that he then advised Ms. Whetstone "that she had been pulled over for obstructing the flow of traffic." It was only then that Defendant Chanoine ran Ms. Whetstone's tags and he avers that he was advised that "the owner of the motor vehicle came back suspended."

22. Ms. Whetstone gave Defendant Chanoine the registration for her motor vehicle which displayed her name. Defendant Chanoine, however, despite being given the motor vehicle's registration with Ms. Whetstone's name claims that Ms. Whetstone gave him a fictitious name.

23. Defendant Chanoine then placed his hand on Ms. Whetstone and alleges that he advised her that she was under arrest. Ms. Whetstone, however, demanded that a supervisor be called to the scene. And before long the supervisor, Defendant Mistysyn, Defendant McMillian, and Defendant Fraser arrived on the scene. It is undisputed that the aforementioned police officers then extracted Ms. Whetstone from her motor vehicle with such extreme force

that her limbs were severely bruised and her face was caused to slam into the roadway. It is also undisputed that Ms. Whetstone did not physically resist the aforementioned police officers' physical extraction.

24. Ms. Whetstone was arrested and taken to Johns Hopkins for treatment of her severe injuries. She was thereafter issued several traffic citations: (1) Failure to Display License on Demand; (2) Driving Vehicle while License Suspended; (3) Vehicle Driver giving False and Fictitious Name to Uniformed Police; (4) Causing Standing Vehicle to Obstruct Free Vehicle Passage of Roadway; and (5) Driving on Suspended License. And in an effort to subsequently "justify" the excessive force and brutality, without any supporting allegations, Ms. Whetstone was separately charged with: (1) Disorderly Conduct; (2) Resisting and/or Interfering with Arrest; and (3) Failure to a Reasonable Lawful Order. All charges received a *nolle prosequi*.

## CAUSES OF ACTION

### COUNT ONE
### Violations of 42 U.S.C. § 1983 – Municipal Liability
*(The City of Baltimore and the Baltimore City Police Department)*

25. Each of the paragraphs of this Complaint are incorporated by Ms. Whetstone as if restated fully herein.

26. That at all times relevant to this Complaint, the Baltimore City Police Department and its personnel were acting under the direction and control of the City of Baltimore, which acted by and through its agents and employees who were responsible for making the policies for the Baltimore City Police Department, its officers, and operations. The Baltimore City Police Department personnel named in this Complaint were acting either pursuant to official policy or the practice, custom, or usage of the City of Baltimore and/or the Baltimore City Police Department, a final decision by a policy maker, or as a result of deliberate indifference toward training or supervision.

I. ***MONELL*** **CLAIM AGAINST THE CITY OF BALTIMORE AND THE BALTIMORE CITY POLICE DEPARTMENT FOR UNCONSTITUTIONAL POLICIES, CUSTOMS, AND/OR PATTERNS AND PRACTICES**

27. At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring officers to fabricate evidence, make arrests without probable cause or legal justification, and to falsely imprison Baltimoreans.

28. At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns and practices encouraging and requiring its police officers to use excessive force without regard for the possibility that they could seriously injure or take a human life where less lethal alternatives exist.

29. At the time of the conduct complained of herein, the City of Baltimore, through its final policy makers, had in force and effect unconstitutional policies, customs, and/or patterns, and practices encouraging and requiring its police officers to intimidate civilians with unlawful physical force.

30. The final policy makers of the City of Baltimore and the Baltimore City Police Department had actual or constructive knowledge of these unconstitutional policies, customs, and/or patterns and practices, yet failed to take any reasonable or adequate steps to remedy them.

31. These policies, customs, and/or patterns and practices led the Baltimore City Police Department and its personnel to believe that this misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

32. These policies, customs, and/or patterns, and practices made it reasonably foreseeable that the Baltimore City Police Department and its personnel, including those named in this Complaint, would violate peoples' constitutional rights in precisely the manner that Ms. Whetstone's rights were violated, and the City of Baltimore and the Baltimore City Police Department, through their respective final policy makers, were deliberately indifferent to this risk.

33. These policies, customs, and/or patterns and practices were the moving force behind the denials of Ms. Whetstone's rights including, but not limited to, the right to be free from being subjected to traffic stops absent probable cause, being falsely arrested and incarcerated, maliciously prosecuted, and being subjected to excessive force.

34. Additionally, these policies, customs, and/or patterns and practices implicitly or explicitly encourage the Baltimore City Police Department and its personnel to be more aggressive and use unlawful and/or unjustifiable force with Baltimoreans.

35. As a result of the unconstitutional policies, customs, and/or patterns and practices, the Defendant police officers attacked Ms. Whetstone, used excessive force, falsely arrested and imprisoned her, maliciously prosecuted her, and, thereafter, fabricated charges,

*inter alia*, in an attempt to justify their brutality, causing Ms. Whetstone to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth Amendments of the U.S. Constitution.

## II. *MONELL* CLAIM AGAINST THE CITY OF BALTIMORE AND THE BALTIMORE CITY POLICE DEPARTMENT FOR UNCONSTITUTIONAL DISCIPLINE, TRAINING, AND SUPERVISION

36. At all times herein pertinent, the City of Baltimore and the Baltimore City Police Department had policies, customs, and/or patterns and practices of failing to properly discipline, train, and supervise the Baltimore City Police Department and its personnel, including the members of the Baltimore City Police Department named in this Complaint, in the proper application of force when around civilians and when it is appropriate to use force at all, and that it is illegal to fabricate evidence or initiate criminal proceedings in an effort to justify the assault of a civilian, arrest absent probable cause, falsely arrest or imprison, and to maliciously prosecute civilians. *To-wit*, the City of Baltimore failed to ensure that the Baltimore City Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland laws when accosting civilians and/or initiating criminal charges against civilians.

37. At all times herein pertinent, the City of Baltimore had policies, customs, and/or patterns and practices of failing to properly discipline, train, and supervise the Baltimore City Police Department and its personnel, including the members of the Baltimore City Police Department named in this Complaint, about the unlawful and/or unjustifiable use of force upon civilians, arrest absent probable cause, false arrest and imprisonment, and malicious prosecution. and failed to ensure that the Baltimore City Police Department and its personnel would conduct themselves in accordance with the United States Constitution and applicable State of Maryland law when interacting with the public and/or apprehending and/or charging a suspect with a crime.

38. The final policymakers of the Baltimore City Police Department had actual or constructive knowledge of these unconstitutional practices yet failed to take any reasonable or adequate steps to remedy them. In fact, the inappropriate use of force and the fabrication of additional charges after the unlawful and/or unjustifiable use of force occur so frequently that they have become the accepted procedure by the Baltimore City Police Department and its personnel.

39. Acting under the color of law, by and through the policy makers of the Baltimore City Police Department and pursuant to official policy, customs, and/or patterns and practices, the City of Baltimore and the Baltimore City Police Department intentionally, knowingly, recklessly, or with deliberate indifference to the rights of its visitors and inhabitants failed to instruct, supervise, control, and/or discipline the members of the Baltimore City Police Department and its personnel in the performance of their duties.

40. These policies, customs, and/or patterns and practices led the named members of the Baltimore City Police Department to believe that misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated, receive meaningful reprimand, or punishment.

41. This pattern made it foreseeable that the Baltimore City Police Department and its personnel, including those named to this Complaint, would violate peoples' constitutional rights, in precisely the manner that Ms. Whetstone's rights were violated, and the City of Baltimore and the Baltimore City Police Department, through their final policy makers, were deliberately indifferent to this risk. In fact, had the Baltimore City Police Department diligently exercised its duties to instruct, supervise, control, and discipline, on a continuing basis as heretofore alleged, it could have prevented or could have aided in preventing the commission of said wrongs and intentionally, knowingly, and with deliberate indifference to visitors and inhabitants of the City of Baltimore, refused to do so.

42. These policies, customs, and/or patterns and practices of the City of Baltimore and the Baltimore City Police Department, as described more fully in the body of this Complaint, were the moving force behind the brutal attack on Ms. Whetstone that is alleged more fully in the body of this Complaint and Ms. Whetstone's subsequent false arrest and incarceration, malicious prosecution, and the fabricated justification for using excessive force as described more fully in the body of this Complaint.

43. As a result of the City of Baltimore and the Baltimore City Police Department's failure to supervise, discipline, and train the Baltimore City Police Department and its personnel, including those police officers named in this Complaint, Ms. Whetstone was denied her constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force, false arrest and imprisonment, and malicious prosecution, and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations the Fourth and Fourteenth Amendments of the U.S. Constitution.

### COUNT TWO
### Violation of Fourth and Fourteenth Amendment Rights
### under 42 U.S.C. § 1983 – Supervisory Violations
*(Stephanie Rawlings-Blake, Catherine Pugh, Anthony Batts, and Darryl Desousa)*
*In their individual and official capacities*

44. Each of the paragraphs of this Complaint are incorporated by Ms. Whetstone as if restated fully herein.

45. The Count Two Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

46. That the Count Two Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

47. That at all times herein pertinent, the Count Two Defendants were acting in the capacity of supervisors to the Baltimore City Police Department and its personnel. As supervisors, the Count Two Defendants were responsible for the training, instruction, supervision, discipline, and control of the police officers employed by the Baltimore City Police Department, including the police officers named in this Complaint.

48. Upon information and belief, the Count Two Defendants received complaints about the conduct of the police officers with the Baltimore City Police Department, including those police officers named in this Complaint, or in the exercise of due diligence would have perceived that the police officers, especially those named in this Complaint, had exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to civilians like Ms. Whetstone.

49. The Count Two Defendants knew or in the exercise of due diligence would have known that the conduct displayed from the police officers with the Baltimore City Police Department that are named in this Complaint was likely to occur.

50. The Count Two Defendants failed to take any preventative or remedial measures to guard against the conduct of the police officers with the Baltimore City Police Department that are named in this Complaint. The failure of the Count Two Defendants amounted to gross negligence, deliberate indifference, or deliberate misconduct, which directly caused the deprivations of the constitutional rights suffered by Ms. Whetstone. The Count Two Defendants failed to train, instruct, supervise, and discipline the police officers with the Baltimore City Police Department named in this Complaint, and the other police officers of the Baltimore City Police Department, and said failure caused Ms. Whetstone's damages.

50.     As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Two Defendants, Ms. Whetstone was denied her constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force and the right to be free from false arrest and imprisonment, arrest absent probable cause, and malicious prosecution, and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth Amendments of the U.S. Constitution.

**COUNT THREE**
**Violation of Fourth and Fourteenth Amendment Rights**
**under 42 U.S.C. § 1983 – Excessive Use of Force**
*(Thadius McMillian, Steven Fraser, Alan Chanoine, and Thomas Mistysyn)*
*In their individual and official capacity*

51.     Each of the paragraphs of this Complaint are incorporated by Ms. Whetstone as if restated fully herein.

52.     The Count Three Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

53.     That the Count Three Defendants were acting under the color of law in their actions and omissions which occurred at all times relevant to this action.

53.     That the Count Three Defendants engaged in actions that deprived Ms. Whetstone of her constitutional right not to be subjected to the use of unreasonable and excessive force.

54.     That the amount of force used by the Count Three Defendants was excessive and would be considered unreasonable by competent police officers presented with the exact same circumstances at the time that the extreme force was used.

55.     That there was no serious crime at issue, no immediate threat to the safety of the Count Three Defendants, or others, and Ms. Whetstone was not resisting arrest or attempting to evade arrest by flight. In fact, at the time the Count Three Defendants used excessive force upon Ms. Whetstone she was seated in her motor vehicle.

56.     As a direct and proximate result of the aforedescribed unlawful and malicious acts of the Count Three Defendants, Ms. Whetstone was denied her constitutional rights including, but not limited to, the right to be free from the unjustifiable use of excessive force and was caused to suffer the additional physical, emotional, and pecuniary damages as described in the body of this Complaint, including violations of the Fourth and Fourteenth

Amendments of the U.S. Constitution.

## COUNT FOUR
**Violation and Conspiracy to Violate Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 – Malicious Prosecution**
*(Thadius McMillian, Steven Fraser, Alan Chanoine, and Thomas Mistysyn)*
*In their individual and official capacities*

57. Each of the paragraphs of this Complaint is incorporated by Ms. Whetstone as if restated fully herein.

58. The Count Four Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

59. The Count Four Defendants conspired by entering into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of initiating and continuing criminal prosecutions against Ms. Whetstone and the Count Four Defendants did in fact, under the color of law, initiate and continue criminal prosecutions against Ms. Whetstone without probable cause, justification, and/or belief that she was guilty.

60. The Count Four Defendants commenced and continued the criminal proceedings against Ms. Whetstone without any belief that she was guilty of the crimes for which she was charged or that they had any reasonable right to charge her. Additionally, the criminal prosecutions against Ms. Whetstone were instituted for a purpose other than bringing Ms. Whetstone to justice or securing the conviction of a guilty person.

61. There was no probable cause for the criminal prosecution the Count Four Defendants initiated and continued against Ms. Whetstone and all the charges levied against Ms. Whetstone were terminated in her favor.

62. The Count Four Defendants acted intentionally, with actual malice and ill will, and without legal justification, knowingly, willfully, and wantonly evidencing a complete and utter disregard for the truth in instituting legal proceedings against Ms. Whetstone and evidenced a reckless and callous disregard for, and deliberate indifference to Ms. Whetstone's constitutional rights.

63. The Count Four Defendants were motivated in the pursuit of criminal charges against Ms. Whetstone, not by a belief that the charges had any factual or legal merit or that probable cause for their existence existed, but for improper, illegal, and unconstitutional purposes, including but not limited to, covering up their brutal attack upon Ms. Whetstone.

64. The conduct of the Count Four Defendants as aforescribed caused Ms. Whetstone to suffer deprivations to her liberty as her liberty relates to the concept of seizure and violated Ms. Whetstone's right to be free of unreasonable and unlawful seizure, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

### COUNT FIVE
**Violation and Conspiracy to Violate Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 – False Arrest / False Imprisonment**
*(Thadius McMillian, Steven Fraser, Alan Chanoine, and Thomas Mistysyn)*
***In their individual and official capacities***

65. Each of the paragraphs of this Complaint is incorporated by Ms. Whetstone as if restated fully herein.

66. That the Count Five Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

67. The Count Five Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of falsely arresting and imprisoning Ms. Whetstone as alleged more specifically in the body of this Complaint.

68. That the alleged basis for Ms. Whetstone's arrest and imprisonment was based on the Count Five Defendants' knowing, deliberate, and reckless disregard for the truth, wherein the Count Five Defendants made false statements and omissions that created falsehoods. Such statements were material and necessary to the finding of probable cause for Ms. Whetstone's arrest and incarceration. The above-described false arrest and false imprisonment was made and continued under the color of state law and without a lawful basis and, *inter alia,* was done in an effort to conceal the brutal attack upon Ms. Whetstone. Further, the Count Five Defendants had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Ms. Whetstone had committed the offenses charged, especially a police officer.

69. That the Count Five Defendants intentionally arrested Ms. Whetstone and/or had her arrested with the intention of confining her within fixed boundaries. Additionally, the Count Five Defendants' conduct in arresting and confining Ms. Whetstone deprived her of her liberty without her consent, probable cause, legal justification, just cause, or any other legally valid reason. Ms. Whetstone was well aware and conscious of her confinement and the proceedings were terminated completely in her favor.

70. That based on the actions and inactions described in the body of this Complaint, the Count Five Defendants caused Ms. Whetstone to be falsely arrested and imprisoned, without reasonable or probable cause, and without any right or authority to do so. Further, the arrest was maliciously procured and instigated and caused the false imprisonment, unlawful restraint and detention of Ms. Whetstone, thereby depriving her of her freedom of movement. This is particularly true because the Count Five Defendants arrested Ms. Whetstone based on their desire to cover up the brutal attack on Ms. Whetstone.

71. That the above-described false arrest and false imprisonment was an abuse of the privilege of detention, as the Count Five Defendants acted with actual malice in detaining Ms. Whetstone without the proper right or legal justification or excuse and with a motive influenced by ill will, hate, and with the purpose of willfully injuring Ms. Whetstone and others.

72. The acts and omissions of the Count Five Defendant was the direct and proximate cause of the violation of Ms. Whetstone's clearly established Fourth and Fourteenth Amendment rights.

### *CLAIMS, DAMAGES, AND JURY DAMAGES*

73. The actions of the Defendants have deprived Ms. Whetstone of her civil rights under federal law, including the Fourth and Fourteenth Amendments to the United States Constitution.

72. The unlawful and reckless acts of the Defendants constituted violations of Ms. Whetstone's rights under the Constitution of the United States of America, including any innominate tort theory encompassed by the facts pleaded herein.

73. The unlawful and reckless actions of the Defendants caused Ms. Whetstone severe emotional distress, humiliation, and embarrassment, pain and suffering, and other damages including, without limitation, damages for lost wages, for which Ms. Whetstone is entitled to monetary relief.

74. All acts committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, with actual malice, wantonly, and/or recklessly and said acts meet all of the standards for the imposition of punitive damages.

75. As a direct and proximate result of these acts, Ms. Whetstone suffered damages including, among others, the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; infliction of physical illness; humiliation;

indignities and severe embarrassment; degradation; and injury to her reputation.

  **WHEREFORE**, the Plaintiff prays as follows:

A. That the Court will award compensatory damages to the Plaintiff and against the Defendants, jointly and/or severally, in an amount in excess of One Hundred Thousand Dollars ($100,000.00), which exceeds any and all jurisdictional requirements of this Court that may exist, and that the City of Baltimore and the Baltimore City Police Department be held liable for the wrongful acts of their employees wherein appropriate;

B. That the Court award punitive damages to the Plaintiff, and against the Defendants, jointly and/or severally, that will deter such conduct by the Defendants in the future;

C. For a trial by jury;

D. For interest on said judgment, recovery of the Plaintiff's costs, including any and all allowable attorney's fees; and

E. For any and all other relief to which the Plaintiff may be entitled.

        Respectfully Submitted,

        **LAW OFFICE OF BARRY R. GLAZER, LLC**

    By: _____
        Charles H. Edwards IV
        Federal Bar No.: 29977
        P.O. Box 27166
        1010 Light Street
        Baltimore, Maryland 21230
        Phone: (410) 547-8568
        Fax: (410) 547-0036
        charles.edwards@robinhoodlawyers.com
        *Counsel for the Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all issues and causes of action asserted in the foregoing Complaint.

_____
Charles H. Edwards IV