*

D'WAN WHETSTONE       *
*Plaintiff*       *

         v.       *       Civil Case No. ELH-18-738
      *

MAYOR & CITY COUNCIL OF       *
BALTIMORE CITY, et al.       *
*Defendants*       *

*********

## MEMORANDUM OPINION

In this civil rights suit, plaintiff D'Wan Whetstone has sued the Mayor and City Council of Baltimore (the "City"); Stephanie Rawlings-Blake, a former Mayor of the City; Catherine Pugh, the current Mayor of the City; the Baltimore City Police Department ("BPD"); Anthony Batts, former BPD Commissioner; Darryl De Sousa, former BPD Commissioner[1]; and BPD Police Officers Thadius McMillian and Alan Chanoine, Detective Steven Fraser, and Lieutenant Thomas Mistysyn (collectively, the "Police Officers"). ECF 1. The individual defendants have been sued in both their individual and official capacities.

The suit is rooted in events that occurred on March 12, 2015, when Whetstone was in the driver's seat of a motor vehicle that was double parked on a City street. ECF 1, ¶ 19. Whetstone alleges that Chanoine unlawfully stopped her vehicle. *Id.* ¶¶ 20-21. Further, she alleges that after McMillian, Fraser, and Mistysyn arrived at the scene, the Police Officers used excessive force to remove her from her vehicle. *Id.* ¶ 23.

---

[1] De Sousa was the BPD Commissioner at the time the suit was filed. Plaintiff uses the spelling of "Desousa." *See, e.g.*, ECF 1. I shall spell the surname as the defendant spells it. *See, e.g.*, ECF 8.

The Complaint contains five counts. Count One contains two "*Monell*" claims against the City and the BPD, pursuant to 42 U.S.C. § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In particular, in Claim I Whetstone alleges unconstitutional policies, customs, and/or patterns and practices of the City and the BPD. In Claim II, plaintiff alleges that the City and the BPD engaged in unconstitutional discipline, training, and supervision of members of the BPD. *See* ECF 1, ¶¶ 25-43. Count Two presents a claim under 42 U.S.C. § 1983 for supervisory liability against Rawlings-Blake, Pugh, Batts, and De Sousa. *Id.* ¶¶ 44-50. Count Three asserts a § 1983 claim against the Police Officers, claiming the use of excessive force, in violation of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 51-56. In Count Four, Whetstone asserts § 1983 claims against the Police Officers for malicious prosecution and conspiracy to maliciously prosecute, in violation of the Fourth and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 57-64. Count Five contains a § 1983 claim against the Police Officers for "false arrest/imprisonment." *Id.* ¶¶ 65-72. Plaintiff seeks compensatory and punitive damages. *Id.* at 19.

Four motions to dismiss are now pending. First, the City, Pugh, and Rawlings-Blake have moved to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 5), supported by a memorandum of law. ECF 5-1 (collectively, the "City's Motion"). The BPD, De Sousa, and Batts have also moved to dismiss under Rule 12(b)(6) (ECF 8), supported by a memorandum. ECF 8-1 (collectively, the "BPD's Motion"). And, the Police Officers submitted two nearly identical motions to dismiss, under Rule 12(b)(5) and Rule 12(b)(6). They argue insufficient service of process and failure to state a claim. The first motion was submitted by Mistysyn alone. ECF 15. The second motion was submitted jointly by all four Police Officers. ECF 22. Each motion is supported by a memorandum of law (ECF 15-1; ECF 22-1) (collectively,

the "Police Officers' Motions") and an exhibit containing Chanoine's Statement of Probable Cause. ECF 15-2; ECF 22-2. Plaintiff opposes the motions (ECF 6; ECF 9; ECF 23), and the defendants have replied. ECF 7; ECF 10; ECF 24. Because the Police Officers' Motions are nearly identical, the opposition (ECF 23) and the reply (ECF 24) address both motions.

No hearing is necessary to resolve the motions. *See* Local Rule 105(6). For the reasons that follow, I shall grant the City's Motion and the BPD's Motion. And, I shall grant in part and deny in part the Police Officers' Motions. Specifically, I shall dismiss Counts Four and Five as well as all official capacity claims against the Police Officers. But, I shall deny the Police Officers' Motions as to Count Three.

## I.     Factual Background

On March 12, 2015, Police Officer Chanoine was on patrol in the area of the 1100 block of Darley Avenue in Baltimore City when he saw a double-parked automobile. ECF 1, ¶ 19. Plaintiff recounts that, according to Chanoine, she was sitting in the driver's seat of the vehicle, talking to an unidentified pedestrian. *Id.* ¶ 20. While Whetstone was talking, "'other vehicles waited behind" her vehicle and "'had to drive around [Ms. Whetstone] nearly hitting the sidewalk.'" *Id.* (alteration in Complaint).[2]

Accordingly, Chanoine conducted a traffic stop. *Id.* ¶ 20. The Officer told plaintiff "'that she had been pulled over for obstruct[ing] the flow of traffic.'" *Id.* ¶ 21. Whetstone gave Chanoine her motor vehicle registration, which displayed her name. *Id.* ¶ 22. Chanoine ran the automobile's tags and "'the owner of the motor vehicle came back suspended.'" *Id.* ¶ 21. Plaintiff alleges that

---

[2] The Complaint quotes the Statement of Probable Cause (ECF 22-2) several times. *See, e.g.*, ECF 1, ¶¶ 20, 22. Yet, the Complaint does not always use quotation marks. And, when it does use quotation marks, it does not attribute the quotations to the Statement of Probable Cause.

even though Chanoine received the vehicle registration with her name, he claims that she provided a fictitious name. *Id.* ¶ 22.

Chanoine "placed his hand" on plaintiff and told her that she was under arrest. *Id.* ¶ 23. The Complaint does not state whether Chanoine informed plaintiff of the crime for which she was arrested. ECF 1. Plaintiff "demanded that a supervisor be called to the scene." *Id.* Mistysyn, McMillian, and Fraser arrived at the scene shortly thereafter. *Id.* ¶ 23.

According to the Statement of Probable Cause (ECF 22-2), signed by Chanoine, Mistysyn and Chanoine repeatedly asked plaintiff to exit the vehicle, but she refused. ECF 1 at 4-5. But, plaintiff alleges that she did not "*physically* resist" this removal. *Id.* ¶ 23 (emphasis added). Plaintiff claims that the police officers forcibly removed her from her vehicle, "with such extreme force that her limbs were severely bruised and her face was caused to slam into the roadway." *Id.*

Thereafter, Whestone was "taken to Johns Hopkins for treatment of her severe injuries." *Id.* ¶ 24. She was issued the following traffic citations: "(1) Failure to Display License on Demand; (2) Driving Vehicle while License Suspended; (3) Vehicle Driver giving False and Fictious Name to Uniformed Police; (4) Causing Standing Vehicle to Obstruct Free Vehicle Passage of Roadway; and (5) Driving on Suspended License." *Id.* Whetstone was also charged with "(1) Disorderly Conduct; (2) Resisting and/or Interfering with Arrest; and (3) Failure to [Obey] a Reasonable Lawful Order." *Id.* Subsequently, "[a]ll charges received a *nolle prosequi*." *Id.*

Plaintiff filed suit on March 12, 2018. ECF 1. McMillian was served on August 12, 2018. ECF 17. According to the returns of service (ECF 18), Mistysyn was served on September 9, 2018, but he asserts that he was served on September 19, 2019. ECF 22-1 at 7 n.3. Chanoine was served on September 28, 2018. ECF 16. On October 18, 2018, counsel for Fraser accepted service

on Fraser's behalf by agreement and without prejudice to the defendant's right to challenge the sufficiency of the service. ECF 22-1 at 2, n.1.

## II.    Legal Standard

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 2019 WL 1105179, at *3 (4th Cir. Mar. 11, 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal

theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct.

346, 346 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally

insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

(citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir.

2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of

relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote

and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual

allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017);

*Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650

F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  But, a court is not required to

accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986);

*Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the

pleading] standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations

allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'*" *Goodman,* 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 08 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

With her Complaint, Whetstone submitted the United States Department of Justice's report, titled "Investigation of the Baltimore City Police Department." *See* ECF 1-2. Because this exhibit was submitted with the suit, and is integral to the *Monell* claim, I may consider it here.[3]

The Police Officers submitted the Statement of Probable Cause (ECF 22-2) as an exhibit. To be sure, the Complaint repeatedly quotes or refers to allegations contained in the Statement of Probable Cause. *See, e.g.*, ECF 1, ¶¶ 19, 20, 21, 23. But, plaintiff does not appear to adopt the veracity of the content of the document, in its entirety; she does not credit the document "over

---

[3] The Court does not mean to suggest that the report would necessarily be admissible at a trial. Nor does the Court suggest that the content of the report is accurate, in whole or in part.

conflicting allegations in the complaint[.]" *Goines*, 822 F.3d at 167. Therefore, at this juncture, I may not consider the Statement of Probable Cause.

### III.    Service of Process

The Police Officers claim that Whetstone failed to serve them within 90 days after the complaint was filed, as required by Fed. R. Civ. P. 4(m). Further, they assert that Whetstone cannot show good cause for her failure to make timely service. Therefore, they contend that the Court must dismiss the suit as to the Police Officers.

Whetstone maintains that she has shown good cause. However, she claims that the Court may extend the time for service even without good cause shown.

Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed." If a defendant is not served within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Under Rule 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Rule 4(m) was enacted in 1993 as a successor to former Rule 4(j), which required that a case "'shall be dismissed'" if the defendant was not served within 120 days and the plaintiff "'cannot show good cause why such service was not made within that period.'" *Chen v. Mayor & City Council of Baltimore*, 292 F.R.D. 288, 292 n.6 (D. Md. 2013) (quoting Fed. R. Civ. P. 4(j) (1988)), *aff'd*, 546 Fed. Appx. 187, 188 (4th Cir. Nov. 12, 2013) (per curiam), *cert. granted*, 35 S. Ct. 475 (2014), *cert. dismissed*, 135 S. Ct. 939 (2015), *reh'g denied*, 135 S. Ct. 1485 (2015). Effective December 1, 2015, the time for service was reduced to 90 days.

In *Mendez v. Elliott,* 45 F.3d 75, 78 (4th Cir. 1995), the Fourth Circuit opined that the new Rule 4(m) represented a "renumber[ing]" of former Rule 4(j), "without a change in substance,"

and requires that if the complaint is not served within the time provided, "the complaint must be dismissed absent a showing of good cause." *Id.* at 78. The *Mendez* Court did not discuss the Advisory Committee Notes to Rule 4(m), which state that the rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown.*'" *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 527 (D. Md. 1999), *abrogated by Chen*, 292 F.R.D. 288 (quoting Advisory Committee Notes) (emphasis altered).

Subsequent to *Mendez*, the Supreme Court decided *Henderson v. United States*, 517 U.S. 654 (1996). In dicta, the Supreme Court stated that, under Rule 4(m), "courts have been accorded discretion to enlarge the [service] period even if there is no good cause shown.'" *Id.* at 662 (quoting Advisory Committee Notes to Rule 4(m)); *see also Henderson,* 517 U.S. at 658 n. 5.

Several decisions in this district have observed that it is unclear whether Rule 4(m) vests a court with discretion to grant an extension of the service deadline, in the absence of good cause. *See, e.g.*, *Lehner v. CVS Pharmacy*, RWT-08-1170, 2010 WL 610755, at *2 (D. Md. Feb. 17, 2010); *Knott v. Atlantic Bingo Supply, Inc.*, JFM-05-1747, 2005 WL 3593743 (D. Md. Dec. 22, 2005); *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 786 (D. Md. 2005); *Melton v. Tyco Valves & Controls, Inc.*, 211 F.R.D. 288 (D. Md. 2002); *Hammad,* 31 F. Supp. 2d at 526; *United States v. Britt*, 170 F.R.D. 8 (D. Md. 1996).

Some regard *Mendez* as binding circuit precedent, *see, e.g.*, *Britt*, 170 F.R.D. at 9, while others have concluded that "*Mendez* is no longer good law." *Hammad*, 31 F. Supp. 2d at 527; *see also Melton*, 211 F.R.D. at 289-90. Others have found it unnecessary to resolve definitively whether a finding of good cause is mandatory before an extension can be granted. *See, e.g.*, *Lehner*, 2010 WL 610755, at *2; *Knott*, 2005 WL 3593743, at *1 n.1. Nevertheless, even if good cause is no longer an absolute requirement under Rule 4(m), "the Court would still need to have

some reasoned basis to exercise its discretion and excuse the untimely service: the Court must give some import to the rule." *Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL 610755, at *3 (observing that where plaintiff "made no effort to serve Defendant within the time allotted under Fed. R. Civ. P. 4(m)," even assuming that the court had discretion to excuse untimely filing, the court would "not make a mockery of the time requirements set forth in the Federal Rules of Civil Procedure").

In *Chen*, 546 Fed. Appx. 187, the Fourth Circuit upheld the lower court decision that relied on *Mendez*, but it did so without analysis. Moreover, the Supreme Court granted certiorari in *Chen* to decide "[w]hether, under Federal Rule of Civil Procedure 4(m), a district court has discretion to extend the time for service of process absent a showing of good cause, as the Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits have held, or whether the district court lacks such discretion, as the Fourth Circuit has held[.]" *Chen v. Mayor & City Council of Balt.*, 135 S. Ct. 475 (2014); *accord Escalante v. Tobar Construction*, PX-18- 980, 2019 WL 109369, at *1n.1 (D. Md. Jan. 3, 2019). The Supreme Court later dismissed the petition because the self-represented petitioner missed a briefing deadline. *Chen v. Mayor & City Council of Balt.*, 135 S. Ct. 939 (2015), *petition for reh'g denied*, 135 S. Ct. 1485 (2015).

Notably, most of the circuits that have considered the issue have decided that good cause need not be shown. *See Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005)); *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996); *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). The other circuits

have not "squarely decided" to the contrary. *Escalante*, 2019 WL 109369, at *3 n.2.

Additionally, "the 2015 amendment appears to clarify []Rule [4(m)] in a manner supporting court discretion to extend the time for service even absent good cause." *Escalante*, 2019 WL 109369, at *3. Judge Xinis explained in *Escalante*, *id.* at *3:

> The 2015 version states that if a plaintiff fails to serve the complaint within 90 days, the court must dismiss or "order that service be made within a specified time." Fed. R. Civ. P. 4(m) (2015). However, where good cause is shown, the rule expressly provides only one option to the Court: extend time for service. *Id.* ("*But* if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.") (emphasis added). The amendment, therefore, states even more clearly than in 1993 that a district court has two options where no good cause is shown—dismiss or extend time for service— whereas upon a good cause showing, the court may only extend time, and not dismiss.

As a consequence of the 2015 amendments, several judges in the Fourth Circuit have concluded that *Mendez* no longer controls. *Id.* at *4; *see Robertson v. Beacon Sales Acquisition*, GJH-16-3241, 2018 WL 2464455, at *3 n.7 (D. Md. May 31, 2018) ("*Mendez* is no longer the controlling authority in the Fourth Circuit because, contrary to former Rule 4(j), Rule 4(m) no longer requires a court to dismiss a complaint absent a showing of good cause."); *Robinson v. G D C, Inc.*, 193 F. Supp. 3d 577, 582-84 (E.D. Va. 2016); *LHF Prods., Inc. v. Does*, No. 3:16-cv-284, 2016 WL 7423094, at *6 n.11 (E.D. Va. Dec. 22, 2016).

Pursuant to Fed. R. Civ. P 4(m), plaintiff was required to serve the Police Officers by June 10, 2018. *See* ECF 1. But, plaintiff did not serve the Police Officers until between 63 and 130 days after the Rule 4(m) deadline expired. *See* ECF 16; ECF 17; ECF 18; ECF 22-1 at 2, n.1, 7 n.3. Moreover, plaintiff failed to seek an extension of the deadline before the end of the 90-day period. *See* Docket.

As the Police Officers note, I have previously concluded in other cases that a plaintiff must show good cause to warrant an extension of the Rule 4(m) deadline. ECF 24 (citing *Bailey v. Bank of Am.*, ELH-16-2243, 2017 WL 1301486, at *6-*8 (D. Md. Apr. 7, 2017)). Nevertheless, I now

reconsider this conclusion in light of Judge Xinis' recent opinion in *Escalante*, 2019 WL 109369, and conclude that it is within the Court's discretion to extend plaintiff's time to serve under Rule 4(m).

In any event, Whetstone contends that she has shown good cause for failing to make timely service. *See* ECF 23 at 3-4. According to the Opposition, plaintiff's counsel "immediately served the Defendants' employer as instructed by the Baltimore City Police Department for service upon the Defendants[;] however[,] they did not file responsive pleadings." ECF 23 at 4. Moreover, plaintiff maintains that BPD "was acutely aware of the lawsuit and very early in the lawsuit filed its own responsive documents." *Id.* Therefore, plaintiff "continued her efforts and attempted to serve the Defendants at applicable precincts and hired a private process server to assist in the efforts." *Id.* at 4. And, Whetstone maintains that defendants "were not cooperating with service." *Id.*

To show "good cause" for extension of the Rule 4(m) deadline, the plaintiff must show that she "made reasonable and diligent efforts to effect service prior to the [applicable time] limit . . . ." *Chen*, 292 F.R.D. at 292 (quotation marks and citation omitted); *accord Knott*, 2005 WL 3593743, at *1. Where a plaintiff has failed to timely serve a defendant, however, courts have found the absence of good cause in a variety of compelling circumstances. *See, e.g.*, *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75 (D. Md. 2005) (holding that murder of a self-represented plaintiff's daughter did not constitute good cause to excuse failure to serve defendant within 120 days); *Knott*, 2005 WL 3593743, at *1-2 (holding that serious illness suffered by plaintiff's counsel, which confined him to "bed rest," did not constitute good cause for failure to serve defendant within 120 days).

Whetstone attempted to effect service by the deadline. ECF 23 at 4; *compare with United*

*States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *8 (D. Md. Mar. 28, 2017) ("[N]o 'reasoned basis' exists where plaintiff 'made no effort' to effect service by [the] deadline.") (quoting *Lehner*, 2010 WL 610755, at *3); *Hoffman*, 379 F. Supp. 2d at 778 (finding no "reasoned basis" where plaintiff's counsel "did absolutely nothing to attempt to serve the[] defendants for 118 days, and offers the unavailability of one of his office staff on the final two days as the reason for untimely service"). Further, the Police Officers do not assert that they are prejudiced by the delay in service. ECF 22-2; ECF 24; *see LHF Prods.*, 2016 WL 7423094, at *6 n.11 ("Because this case remains in an early stage of litigation, in which no defendant has filed an answer or other responsive pleading, the Court sees no prejudice that could result from a brief extension of time in order to serve one defendant.").

In addition, dismissal would likely bar Whetstone from refiling her suit against the Police Officers. *See Sandhir v. Little*, No. 1:17-cv-102, 2018 WL 4144454, at *4 (N.D. W. Va. Aug. 30, 2018) (finding that when a statute of limitations could bar the refiling of claims, it weighs in favor of extending the time for service); *see also* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action[.]").

Therefore, the Court, in its discretion, shall extend the Rule 4(m) deadline and permit the case to proceed.

## IV. Discussion of the Claims

### A. Section 1983 Generally

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, ___ U.S. ___, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v.*

*Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." (Citations and internal quotation marks omitted)).

### B.      Official Capacity; The Fourteenth Amendment

Plaintiff has sued all of the individual defendants in their individual and official capacities. ECF 1 at 14-15.  The suit against the individuals in their official capacities "is in all respects, other than name, a suit against the entity." *Vincent v. Prince George's Cty.*, *Md.*; 157 F. Supp. 2d 588, 595 (D. Md. 2001); *see also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Whetstone concedes that the official capacity claims against the Police Officers are subject to dismissal. ECF 23 at 3. Therefore, I shall dismiss all claims against the individual defendants in their official capacities.

Plaintiff brings all five counts under both the Fourth and Fourteenth Amendments. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham*, 490 U.S. at 395).

For each count, the Fourth Amendment provides the specific constitutional right allegedly violated.  Of relevance here, "the Due Process Clause [of the Fourteenth Amendment] is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar*, 859 F.3d at 245; *see* ECF 22-1 at 9.  Accordingly, I shall dismiss plaintiff's Fourteenth Amendment claims.

### C.    *Monell* liability

In Count One, plaintiff brings a *Monell* claim against the City and the BPD under two theories. First, she alleges that the City and the BPD "had in force and effect unconstitutional policies, customs, and/or patterns and practices encouraging and requiring its police officers to use excessive force[.]"  ECF 1, ¶ 28.  Second, she alleges that defendants failed to "discipline, train, and supervise" their police officers in the proper use force.  *Id.* ¶ 36.

### 1.    *Monell* Generally

A municipality is subject to suit under § 1983.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights.  *Id.* at 690-91.

The *Monell* Court said that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983."  *Id.* at 694; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).   But, liability attaches "only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained, *id.* at 1359 (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978).  But, under § 1983, local governments are responsible only for "their *own* illegal acts."  *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665-683).  They are not vicariously

liable under § 1983 for their employees' actions.  *See id.*, at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 [] (1997) (collecting cases).

Thus, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.  *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens."  *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

To impose liability on a municipality, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation" of constitutional rights.  *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994).  However, a municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior*.  *Monell*, 436 U.S. at 693-94.  Rather, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'"  *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694).

In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation."  *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted); *see Moore v. Howard County Police Dep't*, No. CCB-10-1430, 2010 WL 4722043 at *2 (D. Md.

Nov. 15, 2010).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04.

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'"  *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple*; citations omitted).  In addition, "the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances."  *Id.*

"Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'"  *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003).  A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees."  *Spell*, 824 F.2d at 1387.  In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to

cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan*, 743 F.2d at 229 (internal citations omitted).

A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *Canton*, 489 U.S. at 389).

### 2.      BPD Policies as to Excessive Force

Whetstone does not identify any specific ordinances or regulations that constitute an official City or BPD policy concerning excessive force. *See* ECF 1. Nor does she allege affirmative decisions made by the defendants, or provide any bases for alleging their deliberate indifference. Rather, her allegations amount to a brief discussion of the 116-page report issued by the United States Department of Justice ("DOJ"), dated August 10, 2016, titled "Investigation of the Baltimore City Police Department." ECF 1, ¶ 2; *see also* ECF 1-2 (the "Report").

Plaintiff asserts, ECF 1, ¶ 2:

The Report documented areas in which the United States found reasonable cause to believe that the Baltimore City Police Department engages in a pattern and practice of conduct that violates the United States Constitution and other federal laws, including: (1) making unconstitutional stops, searches, and arrests; (2) using enforcement strategies that produce severe and unjustified disparities in that rates of stops, searches and arrests of African Americans; (3) using excessive force; and (4) retaliating against people engaging in constitutionally-protected expression. The Report additionally outlined areas in which the United States had serious concerns about the lawfulness of Baltimore City Police Department's police practices.

In the first instance, the claim against BPD is not viable under *Monell*, as the BPD has been a State agency, not a local agency, since 1867. *See Mayor & City Council of Baltimore v. Clark*,

404 Md. 13, 23, 944 A.2d 1122, 1128 (2008); *Clea v. Mayor & City Council of Balt.*, 312 Md. 662, 669-70, 541 A.2d 1303, 1306-07 (1988). As an arm of the State, the BPD is not subject to suit, pursuant to *Monell*. *See Jeffers v. Harrison-Bailey*, JFM-16-cv-03683, 2017 WL 1089186, at *7 (D. Md. Mar. 21, 2017) ("[T]he MTA is an arm of the state, and not a local or municipal body. Therefore, [plaintiff] cannot bring a claim against the MTA under *Monell*."); *Burgess v. Balt. Police Dep't*, RDB-15-0834, 2016 WL 795975, at *6 (D. Md. 2016); *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 310-12, 780 A.2d 410, 426-28 (2001).[4]

Moreover, as to the BPD, the Report is of little use to the Court. As the BPD asserts, the Report could not have put the BPD on notice of alleged police misconduct at the time of the incident in March 2015, because the Report was not issued until August 2016. ECF 8-1 at 7. And, as the BPD points out, plaintiff "does not connect any of the facts alleged in the Report to the facts alleged in the Complaint." *Id.*

As noted, although detailed factual allegations are not required in the suit, a complaint must have "facial plausibility." *Iqbal*, 556 U.S. at 678. The suit must contain sufficient "factual content

---

[4] As an arm of the State, the BPD is generally entitled to sovereign immunity. *See, e.g.*, *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 642 (D. Md. 2014); *Cherkes*, 140 Md. App. at 313, 780 A.2d at 428. However, pursuant to the Maryland Local Government Tort Claims Act ("LGTCA"), Md. Code (2013 Repl. Vol., 2018 Supp.), §§ 5-301 *et seq.* of the Courts and Judicial Proceedings Article, the BPD is prohibited "from asserting sovereign immunity to avoid its statutorily-imposed duty to defend or indemnify its employees." *Anderson*, 6 F. Supp. 3d at 643. But, "by adding the [BPD] to the list of local governments in the [LGTCA] . . . the General Assembly waived [BPD's] common law State sovereign immunity *only* to the extent of the statutory duties to defend and indemnify. Otherwise, the [BPD's] State sovereign immunity remained intact." *Cherkes*, 140 Md. App. at 323, 780 A.2d at 434 (emphasis added).

In any event, the defendant "bears the burden of demonstrating" sovereign immunity, because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). And, neither the BPD nor the Police Officers have invoked sovereign immunity. *See* ECF 8; ECF 10; *see also* ECF 27 (filed by the Police Officers on March 13, 2019, withdrawing their Eleventh Amendment immunity argument).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 616 (D. Md. 2016), *aff'd*, 685 Fed. App'x 261 (4th Cir. 2017) (per curiam). It is not the Court's "job to wade through the record and make arguments for either party." *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 138 S. Ct. 1595 (2018); *see also Brooks v. Field*, No. 6:14-cv-2267-BHH, 2016 WL 1165409, at *7 (D.S.C. Mar. 25, 2016) ("'It is not the job of this Court to provide the legal research necessary to support the [party's] arguments if the . . . [party is] unwilling to do so'" itself.) (quoting *Bell v. Fairmont Raffles Hotel Int'l*, No. 12-cv-757, 2013 WL 1291005, at *2 (W.D. Pa. Mar. 27, 2013)).

The claim against the City must also fail. The City does not implement policy for the BPD. *See* BALT. CITY CHARTER, Art II, § 27 ("[N]o ordinance of the City or Act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner."); *Cherkes*, 140 Md. App. at 312, 780 A.2d at 427–28. Indeed, "the City does not sufficiently control the BPD to be responsible for Baltimore police officer conduct under § 1983 (*i.e.*, they are not City employees)." *Estate of Anderson*, 6 F. Supp. 3d at 644; *see also Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 646-48 (D. Md. 2012) (dismissing § 1983 suit against the City because it "does not exert sufficient control over the BPD to be subject to liability for the latter's actions").

Accordingly, I shall dismiss plaintiff's *Monell* claim of excessive force as to both the BPD and the City.

### 3. Failure to Train

Plaintiff alleges that the BPD failed to train BPD officers as to the proper use of force.

ECF 1, ¶¶ 36-43.[5] As discussed, the BPD is a State agency and therefore not subject to a *Monell* claim. But, even if this deficiency is set aside, plaintiff still fails to state claim.

In *City of Canton v. Harris*, 489 U.S. 378, the Supreme Court said that "where a municipality's *failure to train* its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [can] be properly thought of as a city *'policy or custom'* that is actionable under § 1983." *Id.* at 389. (Emphasis added). Indeed, the manner in which a police force chooses to train its officers is "necessarily a matter of 'policy' . . . ." *Spell*, 824 F.2d at 1389. As a result, "the inadequacy of police training may serve as the basis for § 1983 liability [, but] only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388; *see Owens*, 767 F.3d at 402 (recognizing that a municipality may be liable under § 1983 if policymakers fail "'to put a stop or correct a widespread pattern of unconstitutional conduct'") (internal citation omitted).

"[W]hen alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Lewis v. Simms*, AW-11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (quoting *Drewry v. Stevenson,* WDQ-09-2340, 2010 WL 93268, *4 (D. Md. Jan. 6, 2010)), *aff'd*, 582 F. App'x 180 (4th Cir. 2014). To state such a claim, a plaintiff must allege facts showing that policymakers "(1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Spell*, 824 F.2d at 1391. Moreover, the conduct must be "'persistent and

---

[5] The Complaint makes the same allegation as to the City. That claim fails, for the same reasons set forth in the preceding section.

widespread . . . .'" *Owens*, 767 F.3d at 402 (citation omitted). Thus, "[p]revailing under such a theory is no easy task." *Id.*

*Connick v. Thompson*, *supra*, 563 U.S. 51, provides guidance. In *Connick*, respondent Thompson was prosecuted and convicted at separate trials for attempted armed robbery and murder. *Id.* at 54. But, his convictions were vacated when it was discovered that the prosecution failed to disclose the existence of a certain crime lab report. *Id.* Based on the violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Thompson filed a § 1983 suit against Harry Connick, in his official capacity as the Orleans Parish District Attorney. *Id.* He alleged, *inter alia*, a "deliberate indifference to an obvious need to train prosecutors to avoid such constitutional violations." *Id.* at 56.

The district court ruled that, in order to establish deliberate indifference, Thompson was not required to show a pattern of similar *Brady* violations when he could demonstrate that "the need for training was obvious." *Id.* at 58. The jury found for Thompson, and a divided Fifth Circuit affirmed. *Id.* On certiorari, the Supreme Court considered whether a "district attorney's office [could be] held liable under § 1983 for failure to train its prosecutors based on a single *Brady* violation." *Id.* at 54. The Supreme Court explained, *id.* at 60-61 (emphasis in *Connick*):

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691 [ ]; *see id.*, at 694 [ ]. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur*, *supra*, at 480-481 [ ]; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479-480 [ ].

Citing *Canton*, 489 U.S. 378, the *Connick* Court "sought not to foreclose the possibility . . . that the unconstitutional consequences of failing to train could be so patently

obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. Nevertheless, the *Connick* Court said, *id.* at 61:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

As the *Connick* Court observed, 563 U.S. at 60: "To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." (Alteration in *Connick*) (citing *Canton*, 489 U.S. at 388). The *Connick* Court added, 563 U.S. at 61: "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" (Quoting *Canton*, 489 U.S. at 389).

Notably, even if "a particular officer may be unsatisfactorily trained [, that] will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. The *Canton* Court reasoned, *id.* at 391:

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make

mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

In *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032 (D. Md. Sept. 29, 2014), the plaintiff lodged a § 1983 claim for failure to train the police force. *Id.* at *5. The complaint stated, *id.* (quoting the complaint) (alteration in *Peters*):

> [T]he City maintained an "official policy" of . . . "fail[ing] to properly train and supervise its officers; fail[ing] to implement effective procedures for investigating allegations of police misconduct; fail[ing] to discipline officers who violate the Constitutional rights of private citizens through false arrests, malicious prosecutions, and brutal conduct; and generally fail[ing] to provide safeguards against Constitutional abuses by its overzealous officers."

In considering whether to dismiss the failure to train claim, Judge Hazel highlighted the complaint's failure to allege facts concerning the "'nature of the training'" or "'that the officer's conduct resulted from said training.'" *Peters*, 2014 WL 4855032, at *5 (quoting *Lewis v. Simms*, *supra*, 2012 WL 254024, at *1). He noted: "Peters has not even attempted to allege any such facts; instead, he has simply stated in broad, conclusory terms and in a variety of different ways that the City failed to train and supervise its officers." *Id.* at *5 (citation to the record omitted). Emphasizing this deficiency, Judge Hazel concluded that the plaintiff's allegations were "nothing more than a bare-bones generalization that a legal element (*i.e.* the policy[-]or-custom element) is met. Without more, Peters has failed to adequately allege the existence of a policy or custom through the City's purported failure to train its officers." *Id.*

*Hall v. Fabrizio*, No. JKB-12-754, 2012 WL 2905293 (D. Md. July 13, 2012), is also instructive. There, Judge Bredar dismissed a failure to train claim against the BPD because "the

complaint [did] not allege any facts regarding the sort of training that Baltimore police officers actually receive or how that training reflects the decision of any municipal policymaker." *Id.* at *2.

*Canton*, *Connick*, *Hall*, and *Peters*, among other cases, teach that stating a claim for failure to train requires more than bald assertions that police officers were not properly trained. The allegations here are woefully insufficient to state a *Monell* claim against the BPD, based on failure to train.

### D.     Count Two:  Supervisory Violations

Whetstone has sued Rawlings-Blake, Pugh, Batts, and De Sousa in their personal capacities, alleging violations of the Fourth Amendment, based on failure "to train, instruct, supervise, and discipline the police officers" named in the Complaint, thereby causing "Whetstone's damages."  ECF 1, ¶ 50 at 14.[6]

To prevail under § 1983, the plaintiff must show personal fault based upon a defendant's own conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  Thus, there is no respondeat superior liability under § 1983.  *Iqbal*, *supra*, 556 U.S at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane*, 355 F.3d at 782; *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of a supervisory official under § 1983 claims "is premised on 'a recognition that

_____

[6] The Complaint contains two paragraphs with the number 50, on different pages. Therefore, I have included the page number.

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

Plaintiff's allegations are wholly deficient to establish supervisory liability. She alleges no specific facts as to misconduct, instead relying on boilerplate and conclusory assertions. The claims against Rawlings-Blake, Pugh, Batts, and De Sousa are subject to dismissal.

### E.    Count Three: Excessive Force

Count Three alleges a claim against the Police Officers for a violation of the Fourth Amendment, based on the use of excessive force. The Police Officers moved to dismiss, claiming, *inter alia*, that they did not violate plaintiff's constitutional rights. ECF 22-1 at 14-17.[7] Alternatively, they contend that they are protected from liability based on qualified immunity. *Id.* at 17-19.

---

[7] The Police Officers also assert that the Fourteenth Amendment does not apply here. ECF 22-1 at 9.

## 1. Excessive Force

The heart of plaintiff's claims consists of the allegation of the use of excessive force, predicated on the Fourth Amendment. ECF 1, ¶¶ 51-72. In particular, Whetstone claims the officers removed her from her vehicle "with such extreme force that her limbs were severely bruised and her face was caused to slam into the roadway." *Id.* ¶ 23. She also claims the force was excessive, given that she did not engage in a serious crime, resist the arrest, or attempt to flee. *Id.* ¶ 55.

The Fourth Amendment guarantees, *inter alia*, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. It is made applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Under the Fourth Amendment, a law enforcement officer is barred from using excessive force to effect a seizure. *Williams v. Strickland*, ___ F.3d ___, 2019 WL 1030673, at *3 (4th Cir. Mar. 5, 2019); *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). The "'question [is] whether the totality of the circumstances justified a particular sort of . . . seizure.'" *Buchanan*, 325 F.3d at 527-28 (alternation in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). In the event of a violation of the Fourth Amendment, § 1983 provides a damages remedy. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("§ 1983 allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights.").

The touchstone case with respect to a claim of excessive force is *Graham v. Connor*, 490 U.S. 386 (1989). In that case, the Supreme Court rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." *Id.* at 393. It said, *id.* at 394:

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force . . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen," the Court reasoned, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* (quoting U.S. CONST. amend. IV*).* Therefore, the Court concluded that claims of "excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" should be evaluated "under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395; *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Whether an officer has used excessive force is analyzed under an objective reasonableness standard. *Purnell*, 652 F.3d at 531. To determine the reasonableness of an officer's actions "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham*, 490 U.S. at 396). Notably, the officer's actions are examined "in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Graham*, 490 U.S. at 397; *accord Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) ("'Subjective factors involving the officer's motives, intent, or propensities are not relevant.'") (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)).

In particular, courts look to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). However, these factors are not

"exclusive," and there could be other "objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015). Moreover, the court must consider "the proportionality of the force in light of all the circumstances.'" *Ray*, 781 F.3d at 101 (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)).

In this case, it appears undisputed that plaintiff was double-parked on a City street. "Even in a case in which the plaintiff had committed a crime, when the 'offense was a minor one,'" the Fourth Circuit has "found that the first *Graham* factor weighed in plaintiff's favor and upheld the denial of summary judgment to the defendant police officer." *Buchanan*, 325 F.3d at 528 (quoting *Rowland*, 41 F.3d at 174, and citing *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (holding that this factor "strongly weigh[ed] in favor" of plaintiff because officer used force even though plaintiff had committed an "insignificant crime")).

The second factor, whether the suspect poses an immediate threat to the safety of the officer or others, also weighs in Whetstone's favor. In assessing the threat an individual poses, the Fourth Circuit often considers the suspect's conduct at the time of the arrest and "the size and stature of the parties involved." *E.W.*, 884 F.3d at 180-181; *see also Graham*, 490 U.S. at 396; *C.B. v. City of Sonora*, 769 F.3d 1005, 1030 (9th Cir. 2014) (en banc); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004). The Police Officers allege that plaintiff was uncooperative and unwilling to follow their instructions. But, it does not appear that Whetstone posed a significant threat to the safety of the Police Officers, nor do they claim any immediate threat.

The third factor, whether the suspect was resisting arrest or trying to flee, weighs in favor of the Police Officers. According to the Maryland "Court of Appeals' most recent recitation[,] . . . the elements of the crime of resisting arrest in Maryland" are "'(1) [T]he defendant was arrested;

(2) the arrest was lawful; and (3) the defendant refused to submit to the arrest.'" *United States v. Aparicio-Soria*, 740 F.3d 152, 156 (4th Cir. 2014) (quoting *Williams v. State*, 435 Md. 474, 496, 79 A.3d 931, 944 (2013)). *But see DeGrange v. State*, 221 Md. App. 415, 421, 109 A.3d 176, 180 (2015) ("[*B*]*oth* a refusal to submit to lawful arrest and resistance by force or threat of force are necessary to commit the crime of resisting arrest.") (citing *Rich v. State*, 205 Md. App. 227, 250, 44 A.3d 1063, 1077 (2012)) (original emphasis). Whetstone demanded the presence of a supervisor at the scene. ECF 1, ¶ 23. And, according to the officer, she refused to exit the vehicle on request.

Finally, courts often consider the level of force used by the police officers. *See Rowland*, 41 F.3d at 174 (upholding denial of summary judgment to officer in excessive force case in which the officer inflicted "serious leg injury" on a misdemeanant); *Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (per curiam) (same when officer cracked three teeth, cut plaintiff's nose, and inflicted facial bruises); *cf. Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir. 1991) (overturning denial of summary judgment to officer in excessive force case when plaintiff suffered no physical injury).

The Police Officers contend that their actions did not result in an "'injury of any magnitude[.]'" ECF 22-1 at 16 (quoting *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)). But, Whetstone claims she suffered serious injuries and was transported to Johns Hopkins Hospital for treatment. ECF 1, ¶¶ 23-24. Although the full extent of these injuries is unknown at this stage, the Court must construe the allegations "in the light most favorable to the party asserting the injury[.]" *Gilmore*, 278 F.3d at 367 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Accordingly, this factor weighs in plaintiff's favor.

The Police Officers also argue that Whetstone's conduct at the scene vitiates her claim. They rely primarily on *Rogala v. D.C.*, 161 F.3d 44 (D.C. Cir. 1998). There, a police officer pulled over a vehicle after the driver ran a red light. During a sobriety check of the driver, the passenger did not follow the police officer's directions. As a result, the officer told the passenger that she was under arrest and ordered her out of the vehicle. But, the passenger refused to comply. When the officer attempted to remove the plaintiff from the vehicle, the plaintiff scratched him and called for the driver, who was outside the vehicle, to help her. Plaintiff "testified that the officer bruised her arm and she struck and bruised her head on the interior of the car and suffered a black eye." *Id.* at 48. The court concluded that the officer "acted reasonably in the circumstances." *Id.* at 49.

But, even assuming Whetstone failed to follow the police directive to exit the vehicle, this does not defeat her claim. Unlike the plaintiff in *Rogala*, the facts at this juncture do not show that Whetstone used force or *physically* resisted the arrest. Nor did she call for a friend to help her resist the arrest. Further, whereas the police officer in *Rogala* was outnumbered two-to-one, here the Police Officers outnumbered Whetstone, four-to-one.

Accordingly, I am satisfied that plaintiff has plausibly alleged a constitutional violation. *Twombly*, 550 U.S. at 570 (requiring a complaint to contain facts sufficient to "state a claim to relief that is plausible on its face"); *Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . .") (citation omitted).

## 2. Qualified Immunity

As to the claim of excessive force, the Police Officers assert entitlement to qualified immunity, arguing that their conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. ECF 22-1 at 17. Plaintiff insists that no officer "would have believed that throwing the Plaintiff on her face on the asphalt" was lawful.

ECF 23 at 5.

"Qualified immunity shields government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016). Put another way, it "takes cognizance of human imperfections," *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014), and protects government officials from liability for "'bad guesses in gray areas.'" *Brawn v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (citation omitted); *see Safar*, 859 F.3d at 245.

In *Owens*, 767 F.3d at 395, the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The cases are legion in support of this proposition. *See*, *e.g.*, *District of Columbia v. Wesby*, 583 U.S. ___, 137 S. Ct. 577, 589 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier*, 533 U.S. at 206; *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018); *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Goines*, *supra*, 822 F.3d at 170; *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012). Thus, "a government

official who is sued in his individual capacity may invoke qualified immunity." *Bland*, 730 F.3d at 391; *see Harlow*, 457 U.S. at 818.

Notably, qualified immunity is an "'immunity from suit rather than a mere defense to liability[.]'" *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Ussery*, 786 F.3d at 337 (quoting Mitchell, 472 U.S. at 526).

As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (per curiam). Moreover, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231.

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. The doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188

(4th Cir. 2012). In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Purnell*, 501 F.3d at 377 n.2.

The Fourth Circuit has explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto*, 841 F.3d at 235 (citations omitted); *see also Cannon v. Village of Bald Head Island, NC*, 891 F.3d 489, 497 (4th Cir. 2018). Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier*, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see Wesby*, 138 S. Ct. at 589; *Owens,* 767 F.3d at 395-96. The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62; *accord Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018).

If an officer is shown to have violated the rights of a plaintiff, courts must then "evaluate whether the right at issue was 'clearly established' at the time of the officer's

conduct.[] Accordingly, even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)) (other citation omitted); *see also Williams*, 2019 WL 1030673, at *3; *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines*, 822 F.3d at 170).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

To determine whether the right was clearly established, the court first must define the right at issue. *Scinto,* 841 F.3d at 235; *see Occupy Columbia*, 738 F.3d at 118. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. ___, 135 S. Ct. 348, 350 (2014) (quoting *Creighton*, 483 U.S. at 640). Notably, "a right may be clearly established by any

number of sources, including a . . . case, a statute, or the Constitution itself." *Owens,* 767 F.3d at 399.

Generally, to "determine whether a right is clearly established", courts "assess whether the law has 'been authoritatively decided by the Supreme Court,[] the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson*, 893 F.3d at 221 (citation omitted); *see Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.,* 597 F.3d 163, 176 (4th Cir. 2010) (stating that "'ordinarily [courts] need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose'" as of the date of the conduct at issue), *cert. denied*, 562 U.S. 890 (2010). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd*, 563 U.S. at 741); *see Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly,* 580 U.S. ___, 137 S. Ct. 548, 551 (2017) (*per curiam*); *San Francisco v. Sheehan*, 575 U.S. ___, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v. Rickard*, 572 U.S. 765,778-79 (2014); *see also Reichle*, 132 S. Ct. at 2093 ("To be clearly established, a right must be sufficiently clear that 'every reasonable official would [have understood] that what he is doing violates that right.'") (citation and some quotation marks omitted).

However, "[a] right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Wilson*, 893 F.3d at 221 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017) ("[A] 'general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously been held unlawful.'") (quoting *Hope*, 536 U.S. at 741); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017). Indeed, the Supreme Court has never required a "'case directly on point for a right to be clearly established.'" *Kisela*,

138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551); *see al-Kidd*, 563 U.S. at 741; *see also Crouse*, 848 F.3d, at 582-83. But, "courts are 'not to define clearly established law at a high level of generality.'" *Wilson*, 893 F.3d at 221 (quoting *Kisela*, 138 S. Ct. at 1152); *see also Sheehan*, 135 S. Ct. at 1775-76; *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Therefore, courts are to "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams*, 884 F.3d at 227 (quoting *Mullenix v. Luna*, 577 U.S. ___, 136 S. Ct. 305, 308 (2015)) (per curiam).

The central question is "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015). To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Layne*, 141 F.3d at 114); *see Bland*, 730 F.3d at 391 (stating that "[f]or a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right") (internal quotations omitted).

"[C]ourts have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Buchanan*, 325 F.3d at 532; *see also Morgan v. Prince George's Cty., Md.*, AW-09-1584, 2010 WL 2891700, at *5 (D. Md. July 20, 2010) ("Smith would not be protected under qualified immunity because an objectively reasonable officer would know that striking a person on the nose who allegedly did not pose any physical threat to police officers would be an unreasonable use of force."); *Harrison v. Prince William County Police Dep't*, 640 F.Supp.2d 688, 703-04 (E.D. Va. 2009) (allowing excessive force claim

to proceed at motion to dismiss stage where two officers assisted a third one in "forcing" plaintiff's "body to the ground, face first.") (internal quotations omitted).

A claim of use of excessive force in conjunction with an arrest is hardly a "novel situation . . . ." *Harrison*, 640 F. Supp. 2d at 704. And, there is no basis here for a claim of unsettled or new law, such that there was a ground for mistake. *Id.* At this juncture, the Court cannot conclude that the Police Officers are entitled to qualified immunity with respect to the claim that, in extracting plaintiff from the vehicle, they used excessive force, which caused plaintiff to have her face slammed into the road. *See, e.g.*, *Ray*, 781 F.3d at 102 (concluding that at the time of plaintiff's arrest, it was clearly established that she had a right not to be thrown to the ground and punched by a police officer, while she was only suspected of misdemeanor, was answering questions and compliant, and was not attempting to flee); *Hargis*, 987 F.2d at 1008 (upholding denial of police officer's summary judgment motion when, during an arrest, the police officer cut plaintiff's nose, cracked several of plaintiff's teeth, and inflicted facial bruises).

### F.      Counts Four and Five: Malicious Prosecution, False Arrest, and Conspiracy

#### 1.      The Claims

In Counts Four and Five, lodged against the Police Officers, plaintiff alleges § 1983 claims for malicious prosecution and conspiracy to maliciously prosecute (Count Four), as well as false arrest, false imprisonment, and conspiracy to falsely arrest and imprison (Count Five). ECF 1, ¶¶ 57-72. The Police Officers maintain that both counts fail because there was probable cause to conduct the traffic stop and to arrest Whestone. ECF 22-1 at 10-14.

In the Fourth Circuit, "there is no such thing as a '§ 1983 malicious prosecution' claim[.] It is not an independent cause of action." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citation omitted). A plaintiff may, however, bring "a claim founded on a Fourth Amendment

seizure that incorporates elements of the analogous common law tort of malicious prosecution," *id.*: "a wrongful seizure and a termination in her favor of the proceedings following her seizure." *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009); *see Humbert*, 866 F.3d at 555; *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Brooks v. City of Winston-Salem*, 85 F.3d 128, 182 (4th Cir. 1996). Put another way, *Snider*, 584 F.3d at 220 (Stamp, J. concurring):

> To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) the proceeding was not supported by probable cause; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Similarly, "[f]alse imprisonment [and] false arrest . . . 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 157 Md. App. 536, 551, 852 A.2d 1047, 1054 (2004) (citation omitted). Probable cause is also a defense to analogous claims brought under § 1983, alleging violation of the Fourth Amendment.

As the Fourth Circuit said in *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011), "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause" (citation omitted). And, "[f]alse arrest has the same elements as false imprisonment." *Shiflett v. I.T.O. Corp. of Baltimore*, No. 99-1379, 2000 WL 14214, at *4 n. 5 (4th Cir. Jan.10, 2000); *see also Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that "false arrest and false imprisonment claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

Probable cause is "'defined in terms of facts and circumstances sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *see Humbert*, 866 F.3d at 555. "While probable cause requires more than 'bare

suspicion,' it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citation omitted). "In assessing whether probable causes exists, [a court] must examine the totality of the circumstances." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000); *see United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011).

In *Maryland v. Pringle*, 540 U.S. 366 (2003), the Supreme Court reiterated, *id.* at 370-71 (citations and internal quotation marks omitted):

> [T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid [pg. 371] concept—turning on the assessment of probabilities in particular factual contexts— not readily, or even usefully, reduced to a neat set of legal rules.
>
> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized[.]

*See also Illinois v. Gates*, 462 U.S. 213, 239 (1983); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011); *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010).

"Probable cause is a flexible standard that simply requires 'a reasonable ground for belief of guilt' and 'more than bare suspicion.'" *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2011) (quoting *Brinegar*, 338 U.S. at 175). An officer may arrest someone without violating the Fourth Amendment if the officer "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *accord McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019).

Of import here, "'[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.'" *United States v. Williams*, 740 F.3d 308, 312

(4th Cir. 2014) (quoting *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993)); *see Delaware v. Prouse*, 440 U.S. 648, 650 (1979); *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008), *cert. denied*, 555 U.S. 1118 (2009). Even in the absence of probable cause, however, a lawful traffic stop may be based on reasonable, articulable suspicion. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see, e.g.*, *Rodriguez v. United States*, 575 U.S. ____, 135 S. Ct. 1609 (2015); *Knowles v. Iowa*, 525 U.S. 113, 117 (1998); *Berkemer v. McCarthy*, 468 U.S. 420, 439 (1984); *Reid v. Georgia*, 448 U.S. 438, 440 (1980); *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018); *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016); *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011); *United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011). The "subjective motive for the traffic stop is irrelevant to its legality if, objectively, [the officer] had reasonable suspicion to make the stop." *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 717 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018); *see also Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011).

Thus, the court may assess the constitutionality of a traffic stop under the two-prong standard articulated in *Terry v. Ohio, supra. See Arizona v. Johnson*, 555 U.S. 323, 330-31 (2009); *United States v. Palmer*, 820 F.3d at 648; *Williams*, 808 F.3d at 245; *Guijan-Ortiz*, 660 F.3d at 764; *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). Under the dual inquiry, the court first examines "whether the officer's action was justified at its inception and [second] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *see Palmer*, 820 F.3d at 648; *Williams*, 808 F.3d at 245; *Guijon-Ortiz*, 660 F.3d at 764; *Digiovanni*, 650 F.3d at 506. The investigative

seizure or stop must be limited both in scope and duration. *Digiovanni*, 650 F.3d at 507; *see also Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

## 2. Analysis

The Police Officers contend that Chanoine had probable cause to stop plaintiff because, in Chanoine's presence, Whestone violated Maryland traffic laws. ECF 22-1 at 11. They point to § 21-1004 of the Transportation Article ("Trans.") of the Md. Code (2012 Repl. Vol., 2018 Supp.), which provides:

> (a) Except as otherwise provided in this section, a vehicle that is stopped or parked on a two-way roadway shall be stopped or parked parallel to the right hand curb or edge of the roadway, with its right hand wheels within 12 inches of that curb or edge of the roadway.
>
> (b) Except as otherwise provided by local ordinance, a vehicle that is stopped or parked on a one-way roadway shall be stopped or parked parallel to the curb or edge of the roadway, in the direction of authorized traffic movement, with:
>
> (1) Its right hand wheels within 12 inches of the right hand curb or edge of the roadway; or
>
> (2) Its left hand wheels within 12 inches of the left hand curb or edge of the roadway.

According to Whetstone, the Police Officers "were not even aware of which law they were alleging that the Plaintiff was breaking at the time she was accosted." ECF 23 at 5. She notes that the Police Officers cited Whetstone for a violation of Trans. § 21-1001(b), but the Police Officers' Motion alleges a violation of § 21-1004. *See* ECF 23 at 5; ECF 15-1 at 10. Further, Whetstone denies that she violated § 21-1001(b), which states: "[O]n any highway outside of a business district or a residential district, a person may not leave any vehicle standing, without providing an unobstructed width of the roadway opposite the standing vehicle for the free passage of other vehicles." Trans. § 21-1001(b); ECF 1, ¶ 20.

Further, Whetstone maintains that she was not on a highway and therefore did not violate Trans. § 21-1001(b). But, "a police officer's inability to identify the correct code section at the time of a stop does not undermine valid probable cause or reasonable suspicion that a driver violated a traffic law." *Williams*, 740 F.3d at 312. The officer need not "'be able to, at the time of a stop, cite chapter and verse—or title and section—of a particular statute or municipal code in order to render the stop permissible.'" *Id.* (quoting *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). Rather, the officer only must "'reasonably believe that the driver of the car is doing something that represents a violation of the law.'" *Williams*, 740 F.3d at 312 (quoting *United States v. Hughes*, 606 F.3d at 316).

It is undisputed that Whetstone's vehicle was double parked and therefore more than 12 inches from the curb. ECF 1, ¶ 19. Accordingly, the police officers had probable cause, and certainly reasonable suspicion, to effect a stop of plaintiff for a traffic violation. But, this traffic violation was not a sufficient basis to arrest Whetstone under Maryland law. *See* Trans. § 26-202, *infra*.

However, the Police Officers maintain that, under Maryland law, they had probable cause to arrest Whitestone under Trans. § 26-202. *See* ECF 2-1 at 13. Trans. § 26-202 states:

(a) A police officer may arrest without a warrant a person for a violation of the Maryland Vehicle Law, including any rule or regulation adopted under it, or for a violation of any traffic law or ordinance of any local authority of this State, if . . .
* * *
(3) The officer has probable cause to believe that the person has committed the violation, and the violation is any of the following offenses:
* * *
(iv) Driving or attempting to drive a motor vehicle while the driver's license or privilege to drive is suspended or revoked[.]

At the scene of the traffic stop, Whetstone claims she produced the vehicle registration, with her name on it. ECF 1, ¶ 22. However, she acknowledges that Chanoine alleges that he was

advised that "the owner of the motor vehicle came back suspended." *Id.* In short, Whetstone allegedly had a suspended driver's license. *Id.* ¶ 21.

To be sure, if Whetstone's license was suspended, then, under § 26-202(a)(3)(iv), Chanoine would have had probable cause to arrest plaintiff. In that case, her claims for malicious prosecution, false arrest, and false imprisonment would likely fail and, as a result, her claims for conspiracy would fail as well. But, at this juncture, I cannot resolve factual disputes. Rather, I must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.

Because Whetstone has not conceded that her driver's license was suspended, and I cannot credit Chanoine's allegations, I cannot conclude that the Police Officers had probable cause to arrest Whetstone. *See* ECF 1; ECF 23. Therefore, three is no basis to dismiss Counts Four and Five.

## V.  Conclusion

For the reasons set forth above, I shall grant the City's Motion and the BPD's Motion. And, I shall grant in part and deny in part the Police Officers' Motions. Specifically, I shall deny the Policy Officers' Motions as to Counts Three, Four, and Five. But, I shall grant the Motions as to all claims under the Fourteenth Amendment and all claims lodged against the Police Officers in their official capacities.

An Order follows, consistent with this Memorandum Opinion.


Dated: March 13, 2019                            _____/s/_____
                                                 Ellen L. Hollander
                                                 United States District Judge